STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. JOHN B. SCARLETT, PLAINTIFF IN ERROR.

Argued July 3, 1917—Decided October 12, 1917.

1. Where a director of a trust company desired to escape further responsibility as a director by resigning his position, it was for him to see to it that his resignation reached the board of directors, to whom it was addressed, and where the director addressed his resignation to the board of directors but sent it to the secretary and treasurer of the company, and there was no evidence that it had ever reached the board—*Held*, that as the directors could not fill a vacancy of which they had no knowledge, the director, in so sending in his resignation took the chance that it would not reach the proper authorities, and, since it in fact did not reach them, he could not escape the responsibility of being a director.

2. After a drawer of a certified check has parted with it, the situation as to him is precisely as if the bank had paid the money on the check instead of making a certificate of its being good.

3. Where a trust company puts an officer in the position where he has power to certify checks when the depositor's account was good for the amount—*Held*, that, whether it was good or not being a fact known to him, innocent parties who took the check, relying on his certification, ought not to suffer, and the trust company, having put such officer in a position to mislead, is estopped to deny the truth of the officer's statement that such account was good.

On error to the Supreme Court.

For the plaintiff in error, *Conover English* (*McCarter &
English* on the brief).

For the state, *John A. Bernhard* (*J. Henry Harrison* and
*Wilbur A. Mott* on the brief).

The opinion of the court was delivered by

SWAYZE, J. We think the judgment was properly affirmed
and should add nothing but for the further argument here
which calls for some amplification of the reasons given by the
Supreme Court.

The indictment was under section 171 of the Crimes act
against a director of a trust company for overdrawing his ac-
count. The peculiarity of the case is that the overdraft was
by means of a certified check, although the depositor's ac-
count was not good for the amount. The certification was by
the treasurer of the trust company. The check came back
to the trust company in due course through other banks, was
taken by the treasurer out of the paying teller's cash, and
placed in a safe deposit box in the trust company's vault. It
is not questioned that the holder of the check received the
money thereon nor that the funds of the trust company were
short by that amount, but it is argued that the check was
never in fact paid by the trust company since it was never
stamped paid in the usual way, but held by the treasurer as
if it were his own, and the suggestion is that he robbed other
depositors to make the payment, and that, whatever crime the
treasurer may have committed, the present defendant was not
guilty of an overdraft under section 171.

A preliminary question of primary importance was whether
the defendant was a director at the time the check was drawn
and certified. He had been elected a director in the preceding
January and took the oath of office in February. His claim
was that he had resigned the same day. He testified that he
caused to be sent to Smith, the secretary and treasurer of the
trust company, a letter of resignation, of which he produced

a carbon copy; the letter was addressed to the directors. Smith testified that he did not remember having received such a letter, and did not remember the fact that the defendant tendered his resignation as director. The defendant testified that some messenger, not named, from his office, took up the letter of resignation at the same time he took up the oath of office; that it was in the same envelope. In this state of the evidence the trial judge charged that there was no evidence that the letter of resignation was ever received by the board of directors. This, we think, was correct. We need not consider whether under any circumstances evidence of no greater probative force would require a submission of the fact to the jury; nor need we consider what is necessary to constitute a resignation of his office by a director. It is enough to say that Scarlett's attempt was to present his resignation to the board of directors; his letter was addressed to the board. He sent it, however, to the secretary and there is no proof that it ever reached the board. It would, we think, be going too far to hold that communication to the secretary (if we can even go so far as to say it was communicated to the secretary) was communication to the board. This is not a case of constructive notice. In such a case, justice to third parties often requires that the corporation itself be charged with knowledge possessed by its officers. A resignation of a director is different. While he has a right to resign and differs in that respect from a public officer (*State, Reeves, v. Ferguson,* 31 *N. J. L.* 107; *Fryer* v. *Norton,* 67 *Id.* 537), the board of directors, or the stockholders, as the case may be, are like the public authorities in having the right, sometimes the duty, to fill the vacancy. This they cannot do unless they have actual knowledge of its existence. The resignation must be communicated to them, or, to use the language of the charge, must reach them. To hold otherwise might subject directors to the duty of filling a vacancy of which they had no knowledge. Scarlett put his resignation, if his testimony is believed, in the way of reaching the board, but he took the chance of its actually reaching them. It was for him, if he desired to escape further responsibility as director, to see to

it that his resignation reached the board to whom it was addressed. We need not consider whether presentation to any other officer of the trust company would suffice; the defendant undertook to present his resignation to the board; he failed to accomplish it.

The next question of importance is whether the check was ever paid by the trust company so that there was an effective overdraft of the account. The Supreme Court held that the certification of the check was in effect payment. With this we agree. The importance of the question justifies further remark. The question, now, is not that which often arises as to the effect of a certified check as payment of a debt from drawer to holder and a discharge of the drawer from liability. The answer to that question may depend on whether the certification is at the request of the drawer before the check is issued, or at the request of the holder after the check is issued. *Times Square Auto Co.* v. *Rutherford National Bank,* 77 *N. J. L.* 649. The question here is not as to the *effect* of the check as payment between others, but whether the check has itself been paid by the bank. We think it is settled in other jurisdictions for reasons that command our assent that after a drawer of a certified check has parted with it, the situation as to him is "precisely as if the bank had paid the money upon that check instead of making a certificate of its being good." The language is quoted from the opinion of Judge Peckham in *First National Bank of Jersey City* v. *Leach,* 52 *N. Y.* 350, and is justified by the authorities he cites; the opinion itself was concerned with the same question that we dealt with in the case already cited, and was there referred to by us as authority.

It is argued, however, that Smith's certification could not amount to payment by the bank, since he was without authority to certify a check when the drawer's account was not good for the money. Trust companies, under our statutes, are authorized to receive money on deposit to be subject to check or to be repaid in such manner and on such terms as may be agreed upon by the depositor and the trust company; and in view of our own decisions we must take notice of the

fact that they do a banking business. *Mechanics National Bank* v. *Baker*, 65 *N. J. L.* 549. It is too late now to claim that banks (or trust companies doing a banking business) may not certify checks. If it is necessary to prove that the secretary and treasurer of a trust company has by virtue of his office powers as great and extensive as the powers of a cashier of a bank, such proof is present since it is proved and not disputed that the secretary and treasurer was also the manager of this trust company. The question, then, is, What is the effect of a certification by one clothed with these powers when the depositor's account is not in fact good for the check? It must be conceded that no power to overcertify is to be implied; if the power exists, it must be by the express action of the board of directors or of the stockholders or by a course of dealing acquiesced in by the directors or stockholders. No express authority is shown in this case, and we are therefore face to face with the question of the effect on the liability of the trust company of an unauthorized certification by the secretary and treasurer. This question was presented fifty years ago and decided by the Supreme Court of the United States following earlier cases in New York, and resting upon well-established principles of the law of agency and the law of estoppel. *Merchants Bank* v. *State Bank*, 10 *Wall.* 604, 644, 645; *Farmers and Mechanics Bank* v. *Butchers and Drovers Bank*, 14 *N. Y.* 623; 16 *Id.* 125; *Meads* v. *Merchants Bank of Albany*, 25 *Id.* 143. These cases were thoroughly discussed both by eminent counsel and by the court. It is unnecessary to repeat the arguments. It is enough to quote from the federal case to indicate the principle that governed: "If the contract can be valid under any circumstances," says the court, "an innocent party in such a case has a right to presume their existence, and the corporation is estopped to deny them." "Corporations are liable for the acts of their servants while engaged in the business of their employment in the same manner and to the same extent that individuals are liable under like circumstances. Estoppel *in pais* presupposes an error or a fault and implies an act in itself invalid. The rule proceeds upon the consideration that the author of

the misfortune shall not himself escape the consequences and cast the burden upon another." "Those who created the trust, appointed the trustee and clothed him with the powers that enabled him to mislead, if there were any misleading, ought to suffer rather than the other party." Upon these principles the trust company must be held. It put Smith in the position where he had power to certify checks when the depositor's account was good for the amount; whether it was good or not was a fact known to him; innocent parties who took the check relying on his certification ought not to suffer, since they had necessarily to rely upon the statement of the officer charged with the duty; the trust company having put him in a position to mislead, is estopped to deny the truth of his statements. This reasoning applies only to the case of an innocent holder and not to Scarlett himself. The holder in this case is not shown to have been other than innocent, and as to him the certification was equivalent to payment. It is, however, not necessary to rely on the certification as equivalent to payment, since the check was in fact paid. Smith testified and was uncontradicted that he took the check from the paying teller's cash; this of itself would require an inference that it had been paid and was carried as a cash item; it hardly needed Smith's positive testimony that the check had been paid by the trust company. The fact that instead of stamping it paid he put it in the safe deposit box is not material. The holder had had his money and that is payment. Counsel for the defendant argues that if the check was paid by cash received from some other depositor, it was paid by that depositor rather than by the trust company. This is obviously fallacious since the title to all money deposited passes with the deposit to the trust company which thereupon becomes debtor to the depositor. The source of the cash is unimportant; it was the obligation of the trust company by reason of its certification that was satisfied and it must be assumed that it was satisfied with the trust company's money. The necessary result was that Scarlett's account was in fact overdrawn.

One of the questions that arose was whether Smith had applied a certain check properly. Scarlett claimed it should have gone to his credit. Smith had applied it to what he said was an existing indebtedness of Scarlett. The judge, in the course of his charge, told the jury that Smith was corroborated in his testimony regarding the application made by him of the $3,000 check by Mr. Ferguson. If this was anything more than mere comment, it was certainly harmless to the defendant. His own claim was that Smith had misapplied the money. Proof that it had been applied elsewhere than to his account was proof of just what he claimed.

The judgment must be affirmed.

*For affirmance*—THE CHANCELLOR, SWAYZE, PARKER, BERGEN, MINTURN, KALISCH, WHITE, HEPPENHEIMER. WILLIAMS, JJ. 9.

*For reversal*—None.